INTERNATIONAL UNION et al., Plaintiffs–Appellees,

v.

E–SYSTEMS, INC., Defendant–Appellant.

No. 80–1395

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Unit A

Dec. 8, 1980.

Rehearing Denied Jan. 8, 1981.

Smith, Smith, Dunlap & Canterbury, Bowen L. Florsheim, Dallas, Tex., for defendant–appellant.

Youngdahl, Larrison & Agee, Lynn Marie Crider, Little Rock, Ark., for plaintiffs–appellees.

Before CHARLES CLARK, REAVLEY and WILLIAMS, Circuit Judges.

WILLIAMS, Circuit Judge:

In 1951 the National Labor Relations Board certified the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America as the collective bargaining representative for a unit of employees at the Garland, Texas installation of the corporate predecessor of defendant E–Systems, Inc. When E–Systems became a separate entity, it acquired in addition to the Garland facilities other facilities located at nearby Arlington, Texas. Thereafter the Arlington facilities were operated as part of the Garland Division.

In a Memorandum of Understanding dated March 29, 1961, the union and the company agreed that the employees at the Arlington facility were to be covered by the same collective agreement as the employees at the Garland facility, both being under the Garland Division of the company.

In 1971, the Arlington plant facilities were shut down. When the then current collective bargaining agreement expired, the parties in negotiation, in 1972, entered into a Letter of Understanding which stated:

During the 1971 negotiations it was agreed that all references to the Arlington, Texas, plant would be deleted from the Collective Bargaining Agreement. This was on the basis that the Garland Division's Arlington facility ... was discontinued during May and June of 1971. It was further agreed between the parties during these negotiations that should the Garland Division resume operations at this facility in the future, references to the Arlington plant will be returned to the Collective Bargaining Agreement

concerning coverage and application of the Agreement.

On July 19, 1978, the company and the union concluded another regular three–year collective bargaining agreement. The recognition provision of this agreement, Article III, Section 1, provides:

The Company recognizes the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, and its Local Union 848 as the sole collective bargaining agency for the employees as designated in the N.L.R.B. Certificate dated January 25, 1951, and those employees designated in Section A of the Memorandum of Understanding dated March 29, 1961.

During 1978, the employer reopened the Arlington plant under the management of a newly created division of the company called the "Commercial Division". The union has asserted that the employees in the reopened Arlington facility are covered by the Collective Bargaining Agreement of 1978 of the Garland Division by virtue of the Recognition Clause and the reference to the Memorandum of Agreement dated March 29, 1961. The company disputes this contention on the ground that under the Letter of Understanding dated February 3, 1972, the Garland contract applies only if the Arlington facility is operated under the "Garland Division".

The union filed grievances with the company which raised the basic question of whether the Arlington employees were covered by the Garland collective bargaining agreement. The company rejected these grievances on the ground that the contract was not applicable. The union then instituted a demand for arbitration under the arbitration provisions of the contract. The company, in turn, refused to participate in submitting the issue to arbitration.

The union brought suit in federal court under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), to enforce the contract agreement to arbitrate. The District Judge granted the union's Motion for Summary Judgment ordering the defendant to arbitrate the grievances at issue.

The substantive issue between the parties is an issue of contract interpretation. The current collective agreement refers to a Memorandum of Agreement which does state that the contract is to cover employees at the Arlington facility. On the other hand a Letter of Understanding dated 1971 indicates that the Garland contract is to cover Arlington employees, in the event the plant is reopened, only if the Arlington plant is operated by the Garland Division.

■ The parties have agreed in their collective bargaining agreement to submit disputes concerning the interpretation and application of the agreement to arbitration. The fact that the issue is in a sense a "jurisdictional" one as to whether the contract covers the particular employees is not a limitation upon the promise to arbitrate. It is true that if the contract does not and cannot cover the employees at Arlington, an arbitration award to the contrary could not stand. But it is now well established that such jurisdictional issues are to be submitted to the arbitrator in the first instance.

■ In 1960 the United States Supreme Court decided the now well–known Trilogy of cases outlining the relationship between the courts and labor arbitrators under section 301 of the Labor Management Relations Act. *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424. The *Warrior & Gulf* case dealt with the issue of the role of the arbitrator in a case where his or her jurisdiction to hear the case is in dispute. While recognizing that the ultimate decision on arbitrability lies in the court, the court went on to say: "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." 363 U.S. at 582, 80

S.Ct. at 1353. It is now well recognized that the issue of arbitrability is submitted first to the arbitrator for decision if the contract is susceptible to an interpretation which provides for arbitration of the particular issue.

The ambiguity in this contract is manifest. The reference back to the 1961 agreement in the 1978 contract Recognition Clause, when the company was at the same time preparing to reopen the Arlington facility, raises a genuine question about whether the 1972 Letter of Understanding controls.

The District Court made the finding that the Recognition Clause and its reference to the Memorandum of Agreement of 1961 did control, and that the Garland contract did cover the Arlington employees at the reopened plant. This finding was not necessary and should be set aside as deciding an issue which is to be submitted to arbitration. It is for the arbitrator to decide this issue under the principles of *Warrior & Gulf, supra, and see International Brotherhood of Teamsters v. Braswell Motor Freight,* 392 F.2d 1 (5 Cir. 1968). The decision of the arbitrator is, of course, subject to judicial review under the usual standards for such cases.

The appellant also argues that the issue of the scope of the bargaining unit is one which could be resolved by the National Labor Relations Board, and therefore the union's exclusive remedy was with the Board. It is well established, however, that the existence of a possible remedy with the Board does not bar suit for enforcement of the collective contract under section 301 of the Act. *Carey v. Westinghouse Corp.,* 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964).

The finding of the District Court that the collective agreement between the parties covers the employees of the Arlington facility is set aside. The judgment of the District Court directing arbitration of the grievances involved in this case is AFFIRMED.